MARGARET FAGAN *vs.* RHODE ISLAND COMPANY.

PROVIDENCE—MARCH 15, 1905.

PRESENT: Douglas, C. J., and Dubois, J.

(1)  *Negligence.  Presumptions.  Common Carrier.  Res Ipsa Loquitur.*

Negligence of a common carrier is not to be presumed from the mere fact that an injury occurs to a passenger, but the presumption arises from the cause of the injury or circumstances attending it and not from the injury itself.

(2)  *Negligence.  Presumptions.  Common Carrier.  Res Ipsa Loquitur.*

A presumption of negligence sufficient to sustain the burden of proving that the accident was due to the negligence of the carrier does not arise where a collision occurred between a car of defendant carrier and two horses, one wandering about the road unattached and the other harnessed to a wagon the driver of which was asleep, and the explanation offered by defendant is reasonable in view of the facts.

TRESPASS ON THE CASE for negligence.   Heard on petition of defendant for new trial, and judgment for defendant.

DOUGLAS, C. J.   The plaintiff in this action has recovered a verdict for $1,130 for the loss of services of her minor son, who was injured while a passenger upon one of the defendant's electric cars upon the road between Providence and Riverside.

The defendant brings its petition for a new trial on the grounds that the verdict is against the evidence on the issue of the defendant's negligence and in the award of excessive damages, and that the presiding justice erred in admitting certain evidence against the defendant's objection.

The plaintiff's son, a boy about fourteen years of age, was riding in a closed car of the defendant corporation upon a country road, about midnight on the night of September 8, 1903, on the way to Riverside.   The track on which the car ran was located at the extreme westerly side of the road, outside of the ordinarily travelled way.   The moon was shining, but its light upon the track was obstructed by overshadowing trees alongside the road.   Shortly before the collision the motorman turned off the power and rang his gong, and immediately before the collision occurred he applied his brake

and attempted to put sand upon the track. Almost instantly after the brakes were set the car struck a team of horses and came to a stop with one horse under the front of the car and another lying dead in the road. The plaintiff's son, who was sitting in the front corner of the car with his head resting on his arm supported by the window ledge and sleeping, was thrown to the floor by the shock and injured. These are all the facts pertinent to the case which were known to any person in the car except the motorman.

The conductor was standing inside the door, figuring his day-card.

One passenger says he got a glimpse of the team just before it was struck, and describes the situation after the collision; but he gives no information as to the cause of the accident. He says the gong was rung. Another passenger says: "The car stopped quite suddenly, and I heard the glass breaking and the woodwork was all splintered up, so I knew there was something the matter."

The motorman's story is that, proceeding at an ordinary rate of speed, he saw at some distance ahead, but in the travelled part of the road, a dark object which soon appeared to be a pair of horses followed by a covered wagon. At this time he turned off the power and rang his gong, but saw no occasion to apply the brake as the wagon and horses were clear of the track. That suddenly, when close to the car, the team turned in upon the track, and he at once used every means to stop, but without success. The car and the horses came together, and the horses were thrown down and the wagon overturned. He testifies as follows: "Q. Did you meet with an accident that night? A. I did, sir. Q. Whereabouts? A. Between Bay View and Pomham, right opposite the Golf Club ground. Q. At that point on that night, how far could you see? A. Well, it was a moonlight night, but it was not extra light at the spot where I was; it was a very dark spot on the road. Q. Why was that a dark spot? A. It was right under the trees. Q. Did you have your lights lighted? A. Yes, sir. Q. Do you know where the track is at that point? A. I do, sir. Q. On which side of the road? A. It is on the right-hand side towards

Crescent Park. Q. That is on the west side? A. On the west side, I think. Q. And it was on September 8th, on the same place? A. Yes, sir. . . . Q. Now, did you come in contact with anybody that night? A. At the time of the accident I struck a team. Q. What team was it; what sort of a team? A. Two horses, side by side, one hitched in the harness and the other leading right along side of it. Q. That is when you saw it? A. Yes, sir. Q. Then what did you see? A. Well, I see the team at a distance on the road, when I noticed a dark spot; I noticed a dark spot on the road and it was off the track, and there was no danger from me hitting it, and they suddenly turned right on the track and I put on my brakes and done all I could to stop the car. Q. When did you first put your brake on? A. Just as soon as I noticed the horses made a bee-line for the track. Q. You say at that time the horses were side by side? A. Yes, sir. Q. Was there any light upon the team? A. No, sir; not at all. Q. Relative to your ringing the bell, I will ask you what you did? A. I did ring the bell and the parties inside of the car, I asked them, and they said yes. MR. BAKER: Never mind about that. Q. Just what you remember yourself, Mr. Belcher. When this team was upon the track in the manner that you have described, you say you did what to stop the car? A. I put on the brakes. Q. What else? A. I loosened the brake again, and pulled on the reverse but the car slid just the same, and I threw the reverse off again and pulled the brake and made a grab for the sand, but at the same time I was thrown clear through the door. Q. When you made a grab for the sand you were thrown? A. Yes, sir. Q. What threw you? A. We struck the team and that must have banged me through the door, sir. Q. Were you injured? A. Yes, I had a broken leg by it. Q. Is that the trouble with you now? A. That is the trouble with me now."

The driver of the wagon testifies that he had been distributing bread in Bristol, having started from Providence at five o'clock in the morning, and was returning home with one of the horses harnessed between the shafts of the wagon and the other tied behind. Weary with his day's work he fell asleep and allowed

his team to wander at its will. When he was awakened by the shout of the motorman at the moment of the collision, both horses were in front of the wagon, and his inference from the facts is that the horse which was tied behind had broken his fastening and strayed in front of the wagon, joining the one in harness and possibly crowding him upon the track.

A boy in the wagon was also asleep and knew nothing until he was waked by the overturn of the wagon.

The plaintiff bases her right to recover upon the claim that the fact of the collision is sufficient in itself to prove negligence on the part of the defendant's servants who were managing the car; that, although the motorman offers a satisfactory explanation, if true, the jury were not required to believe him, and their verdict should stand.

Undoubtedly if the collision had been between two cars operated by the defendant, the implication of negligence would have been irresistible. If the collision had been with a team in a frequented city street, where care is always necessary to avoid collisions and where proper care will generally avoid them, the implication would arise that proper care had not been used and the burden would have been upon the company to show that it had not been negligent. *Shay* v. *Camden & Sub. Ry. Co.*, 49 Atl. Rep. 547.

So if the collision had been between a street car and a steam car at a crossing, as in *Chicago City Ry.* v. *Engel*, 35 Ill. App. 490; or between a steam car and some obstruction on its own right of way, which it was the duty of the company to keep clear as in *Cin. Ham. & D. Railroad Co.* v. *Brown*, 9 Ohio Cir. Rep. 198; or if the admitted circumstances of the case were such that they probably involved negligence on the part of the company, then the burden would have been thrown upon the company to explain such circumstances and to show to the satisfaction of the jury that their employees had observed due care.

The remarks of Ruggles, J., in *Holbrook* v. *Utica & S. R. Co.*, 12 Kernan, 242, are instructive upon this point. "In actions like the present," he says, "the burden of proving that the injury complained of was caused by the defendant's negligence

lies on the plaintiff.   The same rule applies as in an action for an injury to a passenger in a stage coach.   It generally happens, however, in cases of this nature, that the same evidence which proves the injury done proves also the defendant's negligence; or shows circumstances from which strong presumptions of negligence arise and which cast on the defendant the burden of disproving it.   For example: a passenger's leg is broken while on his passage in a railroad car.   This mere fact is no evidence of negligence on the part of the carrier until something further be shown.   If the witness who swears to the injury testifies also that it was caused by a crash in a collision with another train of cars belonging to the same carriers, the presumption of negligence immediately arises; not, however, from the fact that the leg was broken, but from the circumstances attending the fact.   On the other hand, if the witness who proves the injury swears that at the momemt when it happened he heard the report of a gun outside the car, and found a bullet (1) in the fractured limb, the presumption would be against the negligence of the carrier.   It is incorrect, therefore, to say that the negligence of the carrier is to be presumed from the mere fact that an injury has been done to the plaintiff.   The presumption arises from the cause of the injury or from other circumstances attending it, and not from the injury itself."

The last paragraph is quoted with approval in 3 Thomp. Neg. § 2756.   The same principle is stated in *Murray* v. *Pawtuxet Valley St. Ry. Co.*, 25 R. I. 209, 210, where the court says: " The burden of proving that the accident was due to the negligence of the defendant was sustained by the presumption of negligence arising out of a consideration of the *cause* of the accident itself."

(2)    Is there any presumption of negligence in this case?   We have here a collision between a car and two horses, one wandering about the road, unattached, and the other harnessed to a wagon the driver of which was asleep.   Is it a reasonable implication from these circumstances that the motorman carelessly ran into the horses at the peril of his own life and to the damage of his limbs, after seeing the team on the track a considerable distance away in time to have stopped his car before

meeting it? We think it much more reasonable to suppose that the horses, seeing the bright light of the approaching car, were dazzled and confused, and in their unguided stupidity rushed into the danger which a reasonable being would have avoided.

The mind requires proof to establish the less probable of two contradictory propositions. And the evidence here is all the other way. Leaving out of account, therefore, the evidence of the motorman, we think the plaintiff has failed to make out a case against the company. The account of the transaction given by the motorman is reasonable and consistent and was sustained unchanged under a severe cross-examination. Counsel for the plaintiff was permitted to criticise his refusal to estimate the distance at which he first saw the team under the shadow of the trees. His testimony as reported seems to us that of a cautious and truthful witness who properly declines to guess when he can not speak from accurate knowledge. Yet his reluctance in this regard was made prominent by persistent questioning of counsel, as if it were a disposition to suppress the truth, and must have prejudiced him in the minds of the jury.

Some evidence was introduced to show whether the track was wet or dry on the night in question, and several witnesses were presented who told how far they could see on such a night and within what distance they could stop a car at the place where the accident occurred. All this testimony was inapplicable in the absence of any evidence that the team was on the track until the instant of the collision; but it served the purpose of diverting the minds of the jury from the true issue and of throwing discredit upon the carefulness of the motorman. With these false issues before their minds, and probably moved by the sympathy for the boy which the detailed account of his injuries and sufferings was calculated to excite, the jury returned their verdict.

Stripped of these features the case is one where neither fact nor presumption is in the plaintiff's favor, and the burden which the law places upon her is not sustained.

As these considerations are conclusive against her right to

recover, we are relieved from the necessity of discussing the question how far a jury may be supported in disregarding the only evidence upon an issue when it comes from an interested witness, and the case is remitted to the Common Pleas Division with direction to enter judgment for the defendant.

*David S. Baker and Lewis A. Waterman,* for plaintiff.

*Henry W. Hayes, Frank T. Easton, Lefferts S. Hoffman, and Alonzo R. Williams,* for defendant.